THOMAS PATRICK SHILLINGTON, PLAINTIFF v. K-MART CORPORATION, DEFENDANT

No. 9010SC600

(Filed 19 March 1991)

1. **Appeal and Error § 330 (NCI4th)— videotapes—written transcript encouraged**

Appellants are encouraged to submit, from the outset, a written transcript of the entire proceedings rather than videotapes in the interest of judicial economy and timely resolution of appeals.

**Am Jur 2d, Appeal and Error § 404.**

SHILLINGTON v. K-MART CORP.

[102 N.C. App. 187 (1991)]

2. **Libel and Slander § 16 (NCI3d) — arrest for looting — slander — evidence insufficient to go to jury**

The trial court correctly granted a directed verdict for defendant in an action for slander arising from plaintiff's arrest for looting and trespass following a tornado where plaintiff's evidence showed that defendant's security guard informed a fellow guard and a police officer that plaintiff came onto K-Mart property, picked up K-Mart property and threw it down when challenged, essentially accusing plaintiff of trespass and looting; defendant's security guard refused to listen to plaintiff's explanation as to what he was doing on the site; plaintiff had picked up a K-Mart coat and placed it on a tree; and plaintiff was on a ridge which was close to but not within K-Mart's leased property. The statements made by defendant's agent accusing plaintiff of looting and trespass during an emergency were protected by the qualified privilege and plaintiff failed to present sufficient evidence of malice to rebut the presumption of good faith.

**Am Jur 2d, Libel and Slander §§ 32, 49, 50.**

3. **Appeal and Error §§ 149, 418 (NCI4th) — false imprisonment — voluntary dismissal — no argument on appeal — abandoned**

A directed verdict in favor of defendant on a claim for false imprisonment was affirmed where plaintiff voluntarily dismissed one claim without prejudice and presented no argument on appeal as to the other claim. A party has no right to appeal from a judgment entered on his own motion, and the assignment of error without argument was deemed abandoned.

**Am Jur 2d, Appeal and Error § 697.**

4. **Malicious Prosecution § 13 (NCI3d) — trespass and looting following tornado — malicious prosecution — evidence insufficient for jury**

The trial court did not err by granting a directed verdict in favor of defendant on plaintiff's malicious prosecution claim arising from plaintiff's arrest for looting and trespass following a tornado. Defendant's agents' actions in giving information to the Raleigh Police when turning plaintiff over to them were neither malicious nor in reckless disregard of plaintiff's rights so as to constitute malicious prosecution.

**Am Jur 2d, Malicious Prosecution § 45.**

SHILLINGTON v. K-MART CORP.

[102 N.C. App. 187 (1991)]

5. **Trespass § 2 (NCI3d)— arrest for looting and trespass following tornado—intentional infliction of emotional distress— evidence insufficient to go to jury**

The trial court properly granted a directed verdict for defendant on a claim for intentional infliction of emotional distress arising from plaintiff's arrest for trespass and looting following a tornado where the events in question occurred during a state of emergency; plaintiff was walking in an area in close proximity to the defendant's property and in an area where defendant's merchandise had been scattered by the winds; defendant's agents saw plaintiff pick up an item of K-Mart property and put it down; defendant's agents were present at the site for the purpose of protecting K-Mart property from looters and others who would take advantage of the situation; given what McLaughlin saw of plaintiff's activities, his refusal to listen to plaintiff's explanation, although rude and officious, does not reach the level of being extreme and outrageous; and plaintiff did not present any evidence that McLaughlin's statements were intended to cause extreme emotional distress.

Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 4, 5, 8.

Modern status of intentional infliction of mental distress as independent tort; "outrage." 38 ALR4th 998.

6. **Master and Servant § 35.2 (NCI3d)— arrest for looting and trespass following tornado—negligent supervision—evidence insufficient to go to jury**

The trial court properly granted directed verdict on a claim for negligent supervision following plaintiff's arrest for looting and trespass following a tornado where plaintiff's sole contention was that K-Mart negligently failed to inform its agents of the precise location of the property line along the portion of the property across a valley from the rear of the store; the area in question was normally thick with small pines and larger trees; the area was a tangle of downed trees and debris after the tornado; there was no road, path, or other visible physical evidence of the location of the boundary line; and the only evidence as to the location of the line came from a survey that plaintiff himself conducted which showed

the line to run parallel with and close to the ridge upon which plaintiff was walking.

**Am Jur 2d, Master and Servant §§ 417-419, 443.**

Judge WELLS concurs in part and dissents in part.

APPEAL by plaintiff from order entered 25 April 1990 in WAKE County Superior Court by *Judge Robert L. Farmer* directing verdict on plaintiff's first, third, fourth, fifth and seventh claims for relief. Heard in the Court of Appeals 6 December 1990.

---

[1]   Initially, we would take this opportunity to express our view on the use of videotapes, as opposed to a written transcript, as a method of conducting appellate review of the trial court proceedings. The trial of this case was videotaped in accordance with the Rules to Govern the Use of Video Court Reporting System During Test/Evaluation Period, done by order of the Supreme Court in Conference on 3 February 1988. Videotapes, four in number, were submitted to this Court as part of the Record on Appeal. No written transcript accompanied the briefs and record, except for selected excerpts of some of the testimony included as appendices in the parties' briefs. Although there may be many substantial benefits in videotaping trial proceedings, it is our opinion that the use of videotapes in this Court for appellate review greatly frustrates effective review of the trial proceedings, especially in cases such as this where questions of sufficiency of the evidence are determinative. The time needed to adequately review the evidence is greatly enlarged. This presents problems for an appellate court which must deal with a high volume of cases. We recognize that we can request the Administrative Office of the Courts to produce a written transcript from the videotapes for our use. However, in the interests of judicial economy and a timely resolution of these appeals and in the absence of a rule from the Supreme Court requiring a written transcript in cases that are appealed to this Court, we would encourage appellants to submit, from the outset, a written transcript of the entire proceedings.

---

This is an appeal from a directed verdict in favor of defendant, granted at the close of plaintiff's evidence. At trial, plaintiff's evidence tended to show the following:

SHILLINGTON v. K-MART CORP.

[102 N.C. App. 187 (1991)]

During the early morning hours of 28 November 1988, a series of tornados struck Raleigh, North Carolina, causing severe damage to a large area. In response to the widespread damage, the mayor issued a state of emergency proclamation which covered the area involved in this suit. One of the areas hardest hit was the area surrounding the Town Ridge Shopping Center on Highway 70 West. The large K-Mart store located there was completely destroyed and the ATEC Associates, Inc. building, situated several hundred feet to the northwest of K-Mart, was damaged. The high winds scattered K-Mart property over a wide area including the ravine or valley behind the store and the ridge at the far side of the ravine.

On the morning of 29 November 1988, plaintiff and a co-worker, both employees of ATEC, arrived at work to find the ATEC building damaged and the electrical power off. Having determined that they could not work, they decided to walk around the area to survey the damage. While walking in the area of the K-Mart store they encountered Raleigh Police Officer Stephenson. The three talked amicably for 15-20 minutes during which time plaintiff informed the officer that he was employed at nearby ATEC Associates. As they separated, Officer Stephenson pointed or gestured to the path of the tornado, including the area behind K-Mart, and told them not to go in that area and not to cross any police tapes. Plaintiff and his co-worker then returned to ATEC. Upon examining the damage, they found that ATEC documents and equipment were scattered in the vacant lot behind the ATEC building and that some documents and equipment were missing. They began a search for the missing documents and equipment, in the course of which plaintiff and his co-worker walked along the ridge behind the K-Mart, in an area that had clearly been in the tornado's path. While moving in this area, plaintiff picked up a coat with a K-Mart tag and placed the coat on a tree in the open.

Officer Stephenson testified that he spotted plaintiff walking along the ridge but lost sight of him after a large mound of dirt obscured his view of the plaintiff. Some time later, Robert McLaughlin, a K-Mart security guard, stationed with a view of the valley and the ridge, saw plaintiff and called to him in an angry voice, demanding that plaintiff come to him in the valley. Plaintiff complied with this assertion of authority and entered the valley as ordered. McLaughlin met him along the way and, taking him by the arm, moved him further into the valley area, whereupon he searched plaintiff. Plaintiff testified that he attempted to explain

to McLaughlin that he was looking for lost ATEC property but that McLaughlin would not listen and told him to be quiet. Officer Stephenson became aware that plaintiff had been apprehended when he overheard or was apprised of radio communication between McLaughlin and another K-Mart security guard, Mr. Hayes. When Officer Stephenson arrived in the valley, plaintiff was already there in the company of McLaughlin. Based on information from McLaughlin and/or other K-Mart security personnel that plaintiff had come on K-Mart property, was picking up K-Mart merchandise and had thrown down an item of K-Mart merchandise when challenged, Stephenson and his supervisor decided to arrest plaintiff and take him before the magistrate. Neither Stephenson nor any other police officer was specifically aware of the location of the K-Mart property lines in relation to the ridge where plaintiff was walking, or actually saw plaintiff come into the valley area or saw him pick up K-Mart property. At no time, either at the scene or at the magistrate's office, did plaintiff attempt to explain his behavior to Officer Stephenson.

Plaintiff was taken before the magistrate and charged with trespass during an emergency and looting in violation of G.S. § 14-288.6. The magistrate found probable cause based solely on Officer Stephenson's testimony; no K-Mart personnel appeared at the magistrate's office at any time. Plaintiff was fingerprinted and confined overnight in jail under $10,000 cash bond. He was released the next afternoon about 4:00 p.m. Plaintiff was found not guilty at a subsequent criminal trial in Wake County District Court.

Plaintiff testified that as a result of false statements by K-Mart employees he suffered great emotional distress, depression, embarrassment, humiliation, fear over possible conviction for a crime he did not commit and inability to support his family in the event of imprisonment and out of pocket expenses in defending the criminal charges.

On 26 May 1989, plaintiff filed an action against K-Mart for compensatory and punitive damages, alleging (1) slander, (2) and (3) false imprisonment (two counts), (4) malicious prosecution, (5) intentional infliction of emotional distress, (6) negligent hiring, and (7) negligent supervision. Plaintiff took a voluntary dismissal as to his sixth claim on 26 March 1990. On 29 March 1990, at the close of plaintiff's evidence, the trial court granted defendant's motion for directed verdict pursuant to G.S. § 1A-1, Rule 50, as

SHILLINGTON v. K-MART CORP.

[102 N.C. App. 187 (1991)]

to the first, third, fourth, fifth and seventh claims. On 2 April 1990, plaintiff took a voluntary dismissal without prejudice as to his second claim pursuant to G.S. § 1A-1, Rule 41. Plaintiff appeals from the directed verdict.

*McMillan, Kimzey & Smith, by Katherine E. Jean, for plaintiff-appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner. & Hartzog, by Richard T. Boyette and Kari L. Russwurm, for defendant-appellee.*

JOHNSON, Judge.

With regard to an appeal from a directed verdict, this Court has stated:

> A motion by a defendant for a directed verdict under N.C. Gen. Stat. § 1A-1, Rule 50(a) of the Rules of Civil Procedure, tests the legal sufficiency of the evidence to take the case to the jury and support a verdict for the plaintiff. On such a motion, the plaintiff's evidence must be taken as true and the evidence must be considered in the light most favorable to the plaintiff, giving the plaintiff the benefit of every reasonable inference to be drawn therefrom. A directed verdict for the defendant is not properly allowed unless it appears as a matter of law that a recovery cannot be had by the plaintiff upon any view of the facts that the evidence reasonably tends to establish. (Citations omitted.)

*Shreve v. Duke Power Co.*, 97 N.C. App. 648, 649-50, 389 S.E.2d 444, 444 (1990). With this rule in mind, we determine whether plaintiff's evidence is sufficient to take the case to the jury on any of his claims.

## THE SLANDER CLAIM

[2] Plaintiff alleges that defendant's agent falsely accused him of a crime, that he did so maliciously in that he refused to listen to plaintiff's explanation, that the statements were repeated in the local press, and that as a result, plaintiff was damaged in his personal and professional reputation, incurred attorneys fees in defending himself in court and underwent extreme emotional distress. He contends that this constitutes slander *per se*. Plaintiff's evidence showed that defendant's security guard, while acting within the scope of his employment, informed fellow guard Hayes and

Officer Stephenson that plaintiff came onto K-Mart property, that he picked up K-Mart property and threw it down when challenged, essentially accusing plaintiff of trespass and looting. He also testified that McLaughlin refused to listen to his explanation as to what he was doing on the ridge. Plaintiff admits that he picked up a K-Mart coat and placed it on a tree and that he was on the ridge beyond the valley. His evidence also shows that K-Mart's leased property extended close to but did not include the ridge area.

Slander, generally, is the speaking of base or defamatory words which tend to prejudice another in his reputation, office, trade, business or means of livelihood. *Beane v. Weiman Co.*, 5 N.C. App. 276, 168 S.E.2d 236 (1969). "Where the injurious character of the words appear on their face as a matter of general acceptance they are actionable *per se.*" *Williams v. Freight Lines and Willard v. Freight Lines*, 10 N.C. App. 384, 388, 179 S.E.2d 319, 322 (1971). Accusations of crime or offenses involving moral turpitude constitute slander *per se. Penner v. Elliot*, 225 N.C. 33, 33 S.E.2d 124 (1945); *Talbert v. Mauney*, 80 N.C. App. 477, 343 S.E.2d 5 (1986). Where the words are actionable *per se*, the law raises a *prima facie* presumption of malice and a conclusive presumption of legal injury and damage. *Badame v. Lampke*, 242 N.C. 755, 89 S.E.2d 466 (1955); *Johnson v. Bollinger*, 86 N.C. App. 1, 356 S.E.2d 378 (1987). To establish a claim for slander *per se*, a plaintiff must prove: (1) that defendant's statement was slanderous *per se*, (2) the statement was false, and (3) the statement was published or communicated to and understood by a third person. *West v. King's Dept. Store, Inc.*, 321 N.C. 698, 703, 365 S.E.2d 621, 624 (1988).

Plaintiff's evidence was that he did pick up an item of K-Mart merchandise but that he was not, at any relevant time, on K-Mart property. Plaintiff's evidence is sufficient, viewed in the light most favorable to him, to show that defendant falsely accused him of a crime and that defendant communicated this accusation to third parties, Mr. Hayes and Officer Stephenson.

The question remains whether this communication is protected by a qualified privilege. This Court has stated:

A defamatory statement is qualifiedly privileged when made (1) in good faith, (2) on subject matter (a) in which the declarant has an interest or (b) in reference to which the declarant has a right or duty, (3) to a person having a corresponding interest, right, or duty, (4) on a privileged occasion, and (5) in a manner

SHILLINGTON v. K-MART CORP.

[102 N.C. App. 187 (1991)]

and under circumstances fairly warranted by the occasion and duty, right or interest.

*Shreve,* 97 N.C. App. at 650-51, 389 S.E.2d at 446. Where the occasion is privileged, as is the case here, *see Ponder v. Cobb,* 257 N.C. 281, 126 S.E.2d 67 (1962), the presumption of law is that the defendant acted in good faith, and the burden is on the plaintiff to prove that the publication was made with actual malice. *Stewart v. Check Corp.,* 279 N.C. 278, 182 S.E.2d 410 (1971). Actual malice may be proven by a showing that the defamatory statement was made with knowledge that it was false, with reckless disregard for the truth or with a high degree of awareness of its probable falsity. *Gibby v. Murphy,* 73 N.C. App. 128, 325 S.E.2d 673 (1985). "If plaintiff cannot meet his burden of showing actual malice, the qualified privilege operates as an absolute privilege and bars any recovery for the communication, even if the communication is false." *Clark v. Brown,* 99 N.C. App. 255, 263, 393 S.E.2d 134, 138, *disc. review denied,* 327 N.C. 426, 395 S.E.2d 675 (1990).

We hold that defendant's alleged refusal to listen to plaintiff's explanation does not rise to the level of a reckless disregard for the truth. Plaintiff's evidence was that he did pick up a coat belonging to K-Mart, that he was walking in a tangled debris-strewn area close to the K-Mart which had been leveled by the tornado and over which was scattered essentially the entire contents of the K-Mart store. It was only later, by means of a survey, that the precise location of the property line in that area could be established, and that survey put the line close to where plaintiff was challenged.

We find that the statements made by the defendant's agents accusing plaintiff of looting and trespass during an emergency were protected by the qualified privilege and that plaintiff has failed to present sufficient evidence of malice to rebut the presumption of good faith. This assignment is overruled.

FALSE IMPRISONMENT

[3] By his next assignment of error, plaintiff contends that the trial court erred in directing a verdict for defendant on plaintiff's false imprisonment claim. Plaintiff alleged two claims of false imprisonment against defendant. By his second claim plaintiff alleges that defendant's agents McLaughlin and Shankles unlawfully restrained him. By his third claim plaintiff alleges that defendant's

SHILLINGTON v. K-MART CORP.

[102 N.C. App. 187 (1991)]

agents, without probable cause or reasonable grounds, unlawfully restrained him by directing the Raleigh police officer to arrest plaintiff. The trial judge directed verdict for defendant on plaintiff's third claim. Plaintiff voluntarily dismissed his second claim without prejudice. In his brief on appeal, plaintiff directs his argument toward the elements of the second claim. He presents no argument as to the third claim.

Only an aggrieved party may appeal in the case. G.S. § 1-271. A party has no right to appeal from a judgment entered on his own motion. *Trust Co. v. Morgan, Attorney General*, 9 N.C. App. 460, 176 S.E.2d 860 (1970). "Questions raised by assignment of error in appeals from trial tribunals but not then presented and discussed in a party's brief are deemed abandoned." North Carolina Rules of Appellate Procedure 28(a). Since plaintiff presents no argument as to his third claim it is deemed abandoned and the directed verdict in favor of defendant on plaintiff's third claim is affirmed.

## MALICIOUS PROSECUTION

[4] Plaintiff next assigns error to the directed verdict in favor of defendant on plaintiff's malicious prosecution claim. The elements of malicious prosecution are: "(1) that defendant initiated the earlier proceeding, (2) that he did so maliciously and (3) without probable cause, and (4) that the earlier proceeding terminated in plaintiff's favor." *Jones v. Gwynne*, 312 N.C. 393, 397, 323 S.E.2d 9, 11 (1984). The fourth element is not at issue as plaintiff was found not guilty at trial. As to the other three elements we find plaintiff's evidence insufficient as a matter of law. First we find that defendant did not initiate the criminal proceeding against plaintiff. Officer Stephenson testified that he and his supervisor decided to arrest plaintiff based on the information they received from defendant, but defendant's agents neither directed that they do so nor did defendant's agents press charges themselves, nor did they appear at the magistrate's office at any time. Further, Officer Stephenson testified that he also considered the fact that plaintiff had entered an area he had been warned to stay out of. Plaintiff's evidence fails on this issue. *See Harris v. Barham*, 35 N.C. App. 13, 239 S.E.2d 717 (1978). As to the malice and probable cause elements, we find that plaintiff's evidence also is insufficient as a matter of law. Probable cause, as used in the context of malicious prosecution, is defined as a "reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a

SHILLINGTON v. K-MART CORP.

[102 N.C. App. 187 (1991)]

cautious man in the belief that the accused is guilty of the offense with which he is charged." *Cook v. Lanier*, 267 N.C. 166, 170, 147 S.E.2d 910, 914 (1966). "Probable cause . . . has been properly defined as the existence of such facts and circumstances, known to him at the time, as would induce a reasonable man to commence a prosecution." *Id.* "Although a want of probable cause may not be inferred from malice, the rule is well settled that malice may be inferred from want of probable cause, *e.g.*, as where there was a reckless disregard of the right of others in proceeding without probable cause." *Id.*

We find that under the facts of this case, defendant's agent's actions in giving information to the Raleigh Police and turning plaintiff over to them was neither malicious nor in reckless disregard of his rights so as to constitute malicious prosecution. This assignment is overruled.

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

[5] By his fourth Assignment of Error plaintiff contends that the trial judge erred in granting a directed verdict on plaintiff's claim of intentional infliction of emotional distress. We disagree. The essential elements of this tort are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 340 S.E.2d 116, *disc. review denied*, 317 N.C. 334, 346 S.E.2d 140 (1986). The "extreme and outrageous conduct" necessary for recovery is defined as conduct which "exceeds all bounds usually tolerated by decent society." *Stanback v. Stanback*, 297 N.C. 181, 196, 254 S.E.2d 611, 622 (1979). Neither physical injury nor the foreseeability of injury are elements of the tort. *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981).

> This tort imports an act which is done with the intention of causing emotional distress or with reckless indifference to the likelihood that emotional distress may result. A defendant is liable for this tort when he 'desires to inflict severe emotional distress . . . [or] knows that such distress is certain, or substantially certain, to result from his conduct . . . [or] where he acts recklessly . . . in deliberate disregard of a high degree of probability that the emotional distress will follow' and the mental distress does in fact result.

*Id.* at 449, 276 S.E.2d at 333, *quoting* Restatement (Second) of Torts § 46, Comment i (1965). The determination of what is extreme and outrageous conduct is a question of law for the court. *Briggs v. Rosenthal*, 73 N.C. App. 672, 327 S.E.2d 308, *cert. denied*, 314 N.C. 114, 332 S.E.2d 479 (1985).

We hold that defendant's conduct could not reasonably be regarded as extreme and outrageous. The events in question occurred during a state of emergency following a devastating tornado. Plaintiff was walking in an area in close proximity to the defendant's property and in an area where defendant's merchandise had been scattered by the winds. Defendant's agents saw plaintiff pick up an item of K-Mart property and put it down. Defendant's agents were present at the site for the purpose of protecting K-Mart property from looters and others who would take advantage of the situation. Given what McLaughlin saw of plaintiff's activities, his refusal to listen to plaintiff's explanation, although certainly rude and officious, does not reach the level of being extreme and outrageous. Nor does plaintiff present any evidence that McLaughlin's statements were intended to cause extreme emotional distress.

Plaintiff has presented insufficient evidence to take his claim of intentional infliction of emotional distress to the jury. Accordingly, the trial court properly directed verdict for defendant on this count.

## NEGLIGENT SUPERVISION

[6] Finally, plaintiff assigns error to the trial court's directing verdict on plaintiff's negligent supervision claim. Plaintiff's sole contention is that K-Mart negligently failed to inform their agents of the precise location of the property line along the portion of the property across the valley from the rear of the store. The area in question was normally thick with small pines and larger trees. After the tornado struck, the area was a tangle of downed trees and debris. There was no road or path or other visible physical evidence of the location of the boundary line. The only evidence as to the location of the line came from a survey that plaintiff himself conducted which showed the line to run parallel with and close to the ridge upon which plaintiff was walking. Plaintiff has failed to point to acts of negligent supervision by defendant K-Mart sufficient to take his claim to the jury and we therefore affirm the trial court's dismissal of that claim. This assignment is overruled.

For the reasons stated above we affirm the directed verdicts on all counts.

Affirmed.

Judge COZORT concurs.

Judge WELLS concurs in part and dissents in part.

Judge WELLS dissenting in part and concurring in part.

As to plaintiff's claims for slander and malicious prosecution, I respectfully dissent.

In my opinion, the circumstances surrounding the accusation by defendant's agent that plaintiff was trespassing and looting were sufficiently disputed to leave a jury question as to whether defendant's agent acted with a reckless disregard for the truth.

As to the malicious prosecution claim, it is clear to me that defendant's agent procured the arrest of plaintiff, and that but for the accusations of defendant's agent, there would have been no prosecution. Again, the question of whether defendant's agent acted reasonably under all the circumstances is for the jury.

In all other respects, I concur in the majority opinion.